UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES HARRELL and SAL KASS,
as Trustees of the Tampa Maritime
Association-International
Longshoremen's Association
Pension Fund,

    Plaintiffs,

v.                                  CASE NO. 8:09-CV-1400-T-27AEP

ELLER MARITIME COMPANY and
CONTINENTAL STEVEDORING &
TERMINALS, INC.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' motion for summary judgment (Dkt. 15). Upon consideration, the motion (Dkt. 15) is GRANTED.

### Background

This is an action to collect withdrawal liability payments under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381, *et seq.*

Plaintiffs are trustees of the Tampa Maritime Association-International Longshoremen's Association Pension Fund (the "Fund"). A non-party to this action, Eller & Company, Inc., was subject to a collective bargaining agreement that required periodic contributions to the Fund. In August 2008, Eller & Company discontinued all operations in Tampa, Florida and, as a consequence, withdrew from the Fund. The Fund demanded that Eller & Company pay $1,331,226 in withdrawal liability.

When this amount was not paid, the Fund commenced this action against Continental

Stevedoring & Terminals, Inc. ("Continental") and Eller Maritime Company. The Fund alleged Continental and Eller Maritime Company were jointly and severally liable for the unpaid withdrawal liability pursuant to 29 U.S.C. § 1301(b)(1) because they were 'trades or businesses' under 'common control' with Eller & Company. The Fund voluntarily dismissed Eller Maritime Company from this action, leaving only its claim against Continental.

The Fund has moved for summary judgment. The Fund presented evidence that Eller & Company completely withdrew from the Fund, that the Fund provided notification that Eller & Company and all trades and businesses under common control with Eller & Company were subject to withdrawal liability, that the withdrawal liability was never paid, that Continental is a trade or business under common control with Eller & Company, and that no entity under common control with Eller & Company initiated arbitration. The Fund argues Continental is liable for the withdrawal liability in the amount of $1,331,226, plus pre-judgment and post-judgment interest, statutory penalties, attorneys' fees, and costs. The Fund further argues that all of Continental's affirmative defenses have been waived or are inapplicable.

Continental does not challenge the amount of damages or the bulk of the Fund's contentions. Nor does Continental rely on any of its affirmative defenses. Instead, Continental opposes summary judgment on two narrow grounds: first, the Fund failed to establish that Subchapter III of ERISA applies, and second, whether Continental is a 'trade or business' cannot be resolved on summary judgment because there are genuine issues of material fact as to whether Continental engaged in 'continuous or regular' activities for the primary purpose of profit.

**Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, "the evidence of the non-movant is to be believed." *Hickson*, 357 F.3d at 1260 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). All factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* In resolving a motion for summary judgment, therefore, "the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924.

## Analysis

Any employer that withdraws from a multiemployer pension plan is liable for its proportionate share of "the unfunded vested liability of the plan to its beneficiaries." *Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1463 (11th Cir. 1991). "[T]o prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities," withdrawal liability extends beyond the entity that was obligated to contribute to the plan. *Id.* at 1468 (quotation omitted). Under the MPPAA, all "trades or businesses" that are under "common control" are jointly and severally liable for the withdrawal liability. 29 U.S.C. § 1301(b)(1); *e.g.*, *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991).

### A. ERISA Subchapter III

The withdrawal liability provisions under which the Fund sues appear in Subchapter III of ERISA. With certain exceptions that are inapplicable here, Subchapter III applies to:

> any plan (including a successor plan) which, for a plan year--

> (1) is an employee pension benefit plan (as defined in paragraph (2) of section 1002 of this title) established or maintained--
>
>> (A) by an employer engaged in commerce or in any industry or activity affecting commerce, or
>>
>> (B) by any employee organization, or organization representing employees, engaged in commerce or in any industry or activity affecting commerce, or
>>
>> (C) by both,
>
> which has, in practice, met the requirements of part I of subchapter D of chapter 1 of Title 26 (as in effect for the preceding 5 plan years of the plan) applicable to the plans described in paragraph (2) for the preceding 5 plan years; or
>
> (2) is, or has been determined by the Secretary of the Treasury to be, a plan described in section 401(a) of Title 26, or which meets, or has been determined by the Secretary of the Treasury to meet, the requirements of section 404(a)(2) of Title 26.

29 U.S.C. § 1321(a).

Continental argues there has been no demonstration that Subchapter III applies to the Fund pursuant to paragraph (1) or (2). Continental, however, did not submit any affidavit or other evidence showing that the Fund is not a plan covered by Subchapter III. In response to Continental's argument, the Fund submitted a letter from the Internal Revenue Service which rendered a "favorable determination" that the Fund constituted an employee retirement plan qualified under 26 U.S.C. § 401(a). (Dkt. 33, Watson Aff. ¶¶ 5-7, Ex. A). The Court is satisfied that Subchapter III applies to the Fund pursuant to 29 U.S.C. § 1321(a)(2).

**B.    Liability as a control group member**

Under the MPPAA, all "trades and businesses" "which are under common control" are treated "as a single employer." 29 U.S.C. § 1301(b)(1). The Fund argues Continental is a 'trade or business' under 'common control' with Eller & Company and is therefore an 'employer' within the meaning of the statute. The Court agrees.

As a preliminary matter, the Fund argues Continental waived the right to litigate its status as an employer by failing to request arbitration. The MPPAA provides, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

The provision on which the Fund relies to impose withdrawal liability on Continental, § 1301(b)(1), is not included in the sections subject to mandatory arbitration. Further, the arbitration provision "presupposes a determination that the dispute is with an 'employer.'" *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372 (7th Cir. 1992). Whether an entity is a trade or business under common control and therefore an 'employer' within the meaning of § 1301(b)(1) "cannot be within *exclusive* arbitral jurisdiction." *Id.* at 1373; *see Central States, Se. & Sw. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 n.1 (7th Cir. 1992); *Centra, Inc.*, 947 F.2d at 122 (noting exception to statutory arbitration "where the employer asserts that it was *never* an MPPAA employer and thus not subject to ERISA's dispute resolution provisions"); *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1249-50 (3d Cir. 1987) (whether putative control group member ever became an 'employer' is not subject to mandatory arbitration). Notwithstanding its failure to request arbitration, Continental has not waived the right to litigate whether it is an 'employer' under the MPPAA.[1]

Pursuant to § 1301(b)(1), "an organization other than the one obligated to the Fund" is considered an 'employer' subject to withdrawal liability if two requirements are met: "1) the organization must be under 'common control' with the obligated organization, and 2) the organization must be a trade or business." *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 577 (7th

---

[1] Continental does not dispute the Fund's contention that affirmative defenses 1, 2, 4, and 5 were waived on account of its failure to request arbitration. Nor does Continental dispute the Fund's argument that affirmative defense 3 does not apply to the facts of this case.

Cir. 2007). Continental does not dispute that it is under 'common control' with Eller & Company. Indeed, Eller & Company's CEO, Michael Christian, testified that Eller & Company "owns 100 percent of Continental." (Dkt. 16-17, Christian Dep. 27). Rather, the parties' dispute centers on whether Continental constitutes a 'trade or business' within the meaning of the statute.

Continental takes the position that it is not a 'trade or business' but simply a holding company for passive investments. To determine whether an enterprise is a 'trade or business,' courts have applied the test set forth in *Commissioner v. Groetzinger*, 480 U.S. 23 (1987). *See, e.g., Pioneer Ranch*, 494 F.3d at 577; *Connors v. Incoal, Inc.*, 995 F.2d 245, 251 (D.C. Cir. 1993). The *Groetzinger* test considers whether the enterprise was engaged in activity "1) for the primary purpose of income or profit, and 2) with continuity and regularity." *Pioneer Ranch*, 494 F.3d at 577.

Continental does not dispute that it was engaged in activity for the primary purpose of income or profit. The record evidence shows that Continental is a holding company for two companies, Eller ITO and Port of Miami Terminal Operating Company ("POMTOC"). (Christian Dep. 28). And the holding of investments "will normally satisfy the first prong of *Groetzinger* since the purpose is to produce income . . . ." *Central States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 896 (7th Cir. 2001).

But the passive holding of an investment, without more, is insufficient to qualify an enterprise as a 'trade or business.' *E.g., id.* at 895-96. Whether Continental is a 'trade or business' therefore turns on the second prong: whether its activities for the purpose of producing profit were 'regular or continuous.' This is determined by considering "activities taken with regard to the property," as opposed to the "mere ownership of property." *Id.*

Christian testified:

> Q: Mr. Christian, would you please repeat your answer? Does Continental engage[] in any business?
>
> A: Continental is managing owner of Eller ITO and POMTOC.

6

> Q: Can you please describe to me what you mean as a managing owner?
>
> A: Continental Stevedoring owns 50 percent of Eller ITO; 25 percent of POMTOC and has [a] management position in both companies so it is able to participate in management meetings.
>
> Q: When you say, "able to participate in management meetings," can you please describe what you mean?
>
> A: Every month when managers have a meeting, a Continental representative is allowed to attend.
>
> Q: At these monthly meetings, can the Continental representative do anything other than attend? I'm sorry. Are they allowed to do anything other than attend the meetings?
>
> A: Yes.
>
> Q: What else can the Continental representative do?
>
> A: If there are decisions to be made, a Continental representative is involved in a voting procedure and also allowed to provide feedback in any areas where Continental may have an opinion.
>
> . . .
>
> Q: Does Continental make business decisions with respect to the business of Eller ITO or POMTOC?
>
> A: Yes. We have some decisions that we are involved in in the management level. We do not physically get out and manage personnel.

(Christian Dep. 30-31).

These activities are well beyond that of a passive shareholder. Continental has not submitted any evidence to show that its management and business decision-making activities were not regular or continuous. Continental relies on the affidavit of Thomas E. Duggar, who averred that Continental is not "responsible" for "stevedoring services, contracts, or other businesses" related to stevedoring. (Dkt. 31-1, Duggar Aff. ¶ 3). But Duggar's affidavit fails to address the activities described in Christian's testimony and therefore adds nothing. Christian's testimony that Continental "do[es] not

7

physically get out and manage personnel" is likewise immaterial. (Christian Dep. 31). In short, the record evidence demonstrates that Continental engaged in regular and continuous management and business decision-making activities and therefore is properly considered a 'trade or business.'

The conclusion that Continental is a 'trade or business' furthers the MPPAA's purpose of preventing the avoidance of "ERISA obligations by fractionalizing operations into many separate entities." *Ryan's Coal Co.*, 923 F.2d at 1468. The control group of Eller & Company cannot avoid withdrawal liability by placing income-producing companies such as Eller ITO and POMTOC in a holding company whose sole business purpose is to manage those assets. *See, e.g., Central States, Se. & Sw. Areas Pension Fund v. XTL Transport, Inc.*, No. 95 C 918, 1996 WL 296649, at *12 (N.D. Ill. June 3, 1996) (accepting argument "that a holding company is a business under the Act, even if its business is to manage the stock or assets of its operating subsidiaries," because "[a]ny other construction of [the holding company's] status would subvert the statutory purpose against dissipation or fractionalization of assets"); *NYSA-ILA Pension Trust Fund v. Lykes Bros., Inc.*, No. 96 CIV 5616 (DLC), 1997 WL 458777, at *6 (S.D.N.Y. Aug. 11, 1997) ("To allow the non-bankrupt holding companies . . . to escape liability would subvert the very purpose Congress had in mind in creating controlled group liability.").

Continental argues summary judgment is inappropriate, however, because whether an enterprise constitutes a trade or business involves a determination of ultimate fact. *See Incoal, Inc.*, 995 F.2d at 251; *Slotky*, 956 F.2d at 1373. While that determination is indeed fact-dependent, Continental points to no material facts which are in dispute and which would require a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact."). Instead, Continental argues the effect, or characterization, of undisputed facts, which does not raise

a triable issue. *See, e.g., Incoal, Inc.*, 995 F.2d at 251-52 (noting summary judgment may be appropriate where "all of the material facts underlying the ultimate fact of whether the operation at issue rises to the level of a 'trade or business' [a]re undisputed"); *Slotky*, 956 F.2d at 1373-74.

Continental does not dispute that it is under common control with Eller & Company. And the undisputed evidence demonstrates that Continental engaged in activities for profit and on a continuous basis. Summary judgment in favor of Plaintiffs is therefore appropriate.

### Conclusion

Plaintiffs' Motion for Summary Judgment (Dkt. 15) is **GRANTED**. Based on withdrawal liability, 29 U.S.C. § 1381(a) & (b), Continental is liable to the Fund in the amount of $1,331,226. Within 10 days, the Fund shall file an updated calculation of interest and statutory penalties, along with a memorandum of legal authority not exceeding three (3) pages. Continental may file a response within seven (7) days thereafter. A separate judgment will follow. The Court reserves jurisdiction to award attorneys' fees and costs. The clerk is directed to administratively **CLOSE** this case.

**DONE AND ORDERED** this 30th day of September, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record